No. 34,050

THE STATE OF KANSAS, *Appellee*, v. HARRIS HARRINGTON, *Appellant*.

(83 P. 2d 659)

Opinion filed November 5, 1938.

*Harry Hayward* and *Grant W. Harrington*, both of Kansas City, for the appellant.

*Clarence V. Beck*, attorney general, *C. Glenn Morris*, assistant attorney general, *Arthur J. Stanley, Jr.*, county attorney, and *E. A. Schalker*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Appellant was charged and found guilty of the crime of embezzlement. He has appealed and contends: (1) That the court erred in overruling his motion to quash the information, (2) that the evidence was insufficient to sustain the verdict, (3) that the court erred in refusing to give instructions requested, and (4) that the court erred in the instructions given, and (5) complains of misconduct of the court and of the bailiff in charge of the jury while it was deliberating.

The evidence on behalf of the state consisted of the testimony of as many as nine witnesses and a considerable amount of documentary evidence. In preparing his appeal appellant had transcribed and has abstracted only a part of the testimony of two witnesses and none of the documentary evidence. Under the statute relating to appeals in criminal cases (Laws 1937, ch. 274, § 3, G. S. 1937 Supp., 62-1724) it is not essential to his appeal that he have all of the oral testimony transcribed, or, indeed, that he have any of it transcribed. He is required to have transcribed only "so much of the testimony as is needed to present his case on appeal." The legal questions which he desires to present to the court on appeal may not involve the evidence. If that is true, obviously it is not necessary for him to go to the expense of having the testimony transcribed, or of abstracting the evidence. It is just as obvious that a question which is presented on appeal and which depends upon the evidence cannot be reviewed without it. Appellant, therefore, is in no position to ask this court to pass upon the sufficiency of the evidence to sustain the verdict; neither is he in position to ask this court to pass upon the ruling of the trial court in refusing to give instructions requested, or upon the contention that the instructions given were erroneous, insofar as such instructions, refused or given, would depend upon evidence.

Appellant is entitled to be heard upon the ruling of the court in denying his motion to quash the information. The charging part of the information reads:

"On or about the 30th day of December, 1935, one Harris Harrington, then and there being a duly appointed, qualified and acting clerk in the office of the county treasurer of Wyandotte county, Kansas, did then and there unlawfully, willfully and feloniously, without the assent of his employer, with intent to convert to his own use, and with intent to defraud the county of Wyandotte, a municipal corporation, and one Frank Zimmer, county treasurer of Wyandotte county, Kansas, embezzle, take, make way with and secrete a certain bank check in words and figures as follows (the check is set out in full with defendant's endorsement thereon) of the value of two hundred and nine dollars ($209.48) and forty-eight cents, lawful money of the United States, . . . , the said bank check being the property of the said county of Wyandotte and the said Frank Zimmer, county treasurer of Wyandotte county, Kansas, and not the property of him, the said Harris Harrington, which said bank check of the value of $209.48 had come into his possession and under his care by virtue of his office as clerk in the office of the county treasurer of Wyandotte county, Kansas."

The motion to quash was upon the following grounds:

"1. The information is not direct and certain as to the offense pretended to be charged. 2. The offense therein pretended to be charged is not clearly set forth in plain and concise language without repetition. 3. The offense pretended to be charged is not stated with such a degree of certainty and is not set forth in plain, concise language without repetition, but is set forth in such general terms that the defendant cannot well know what he is required to defend against. 4. The offense pretended to be charged is not stated with such a degree of certainty that the court may pronounce judgment upon conviction, according to the rights of the case. 5. Because of duplicity. 6. The facts stated in said information do not constitute a public offense."

Appellant in his brief argues that the information should have been quashed because "the accused, as described, was not one of those coming within the statute naming those who might embezzle. . . . The facts which would make the case one of embezzlement were not set out in the information." This argument is predicated upon appellant's interpretation of our statute (G. S. 1935, 21-545) relating to embezzlement, which reads:

"Any agent, employee, clerk, apprentice or servant of any private person, or of any copartnership (except agents, employees, clerks, apprentices or servants within the age of sixteen years), or any trustee of an express trust, or any executor or administrator of any estate, or the guardian of the property of any minor, habitual drunkard, or person of unsound mind, or any officer, clerk, agent, employee or servant of any corporation, joint-stock association or other association, or any person employed in such capacity, or any officer of this state or any county, township, city, board of education or school district or road district therein, or any receiver appointed by any court or judge in this state, who shall embezzle or convert to his own use, or shall take, make way with, or secrete, with intent to convert to his own use, without the assent of his employer, any money, bank bills, treasury notes, goods, rights in action, or valuable security or effects whatsoever, belonging to any such person, copartnership, association, corporation, joint-stock association, estate, minor, habitual drunkard, person of unsound mind, state, county, city, board of education, township or school district, or road district, or the beneficiary of such trust fund, or being a part of the funds, assets or property of such receivership, which shall have come into his possession or under his care by virtue of such employment, office or trust, shall upon conviction thereof be punished in the manner prescribed by law for stealing property of the kind or value of the articles so embezzled, taken or secreted; or if any agent shall, with intent to defraud, neglect or refuse to deliver to his employer or employers, on demand, any money, bank bills, treasury notes, promissory notes, evidences of debt or other property which may or shall have come into his possession by virtue of such employment, office or trust, after deducting his reasonable or lawful fees, charges or commissions for his services, unless the same shall have been lost by means beyond his control before he had op-

portunity to make delivery thereof to his employer or employers, or the employer or employers have permitted him to use the same, he shall upon conviction thereof be punished in the manner provided in this section for unlawfully converting such money or other property to his own use."

In this same connection we shall consider appellant's objection to an instruction of the court stating the substance of this statute, and closing with this language:

"You are instructed that the defendant, Harris Harrington, was, on or about the 30th day of December, 1935, an officer of Wyandotte county, Kansas, within the meaning of the statute stated above."

Appellant's contention is that the information did not charge him with being an officer of the county, and that the court erred in stating that he was an officer of the county within the meaning of the statute above quoted.

It will be noted the information charged appellant as "being a duly appointed, qualified and acting clerk in the office of the county treasurer of Wyandotte county, Kansas," and that the bank check "had come into his possession and under his care by virtue of his office as clerk in the office of the county treasurer of Wyandotte county, Kansas." The court takes judicial notice of the fact that Wyandotte county is the most populous county in the state. The legislature recognized the fact that several persons are required to perform the official duties imposed upon the treasurer of that county and provided as follows:

"The county treasurer shall receive a salary of $3,250 per annum; his deputy, $2,100 per annum; and for additional clerks, to be appointed by him, with approval of the board of county commissioners, the board of county commissioners may authorize an expenditure of not exceeding $12,000 per annum." (G. S. 1935, 28-302b.)

The testimony abstracted discloses that appellant had been duly appointed by the county treasurer as one of the clerks in his office, and that the appointment had been approved by the board of county commissioners, and that his official duties there were to receive checks for the payment of taxes which came to the office by mail, to make the proper entries in books provided for that purpose so that tax receipts could be written, and to place such checks with others constituting the funds of the county. His duties in the office were official duties. The check in question came into his possession in his performance of such duties. Appellant makes a critical examination of the statute above quoted, from which he concludes that

no one composing a part of the official force of the county treasurer could be guilty of embezzlement except the county treasurer himself. This analysis does not appeal to us as being sound. We think the instruction of the court on this point was correct, and that the information should not have been quashed for any of the reasons urged.

Counsel on each side have cited and discussed many authorities, all of which we have considered carefully. It will not be necessary to analyze these authorities, for, after all, the question is largely one of statutory construction, and we are convinced that the construction the trial court gave, and which we are giving, to these statutes is correct. A complete analysis of the authorities would lead to the same conclusion.

Appellant complains of misconduct of the bailiff and the trial court. In the motion for a new trial nothing was said about the misconduct of the court. At the hearing of the motion for a new trial it was shown by affidavits that some time after the case had been submitted to the jury they rang for the bailiff. He went to the jury room. The foreman asked him if with their verdict they could recommend leniency. The bailiff said leniency had been recommended in other cases. One of the jurors said he would rather hear the court say that. The bailiff then went to the court and reported what had taken place. The court told the bailiff to tell the jury that it would receive such a recommendation. This was done, and shortly thereafter the jury returned their verdict, with a recommendation for leniency. Appellant argues this was reversible misconduct, and cites *Madden v. State,* 1 Kan. 340; *State v. Snyder,* 20 Kan. 306; *State v. Brown,* 22 Kan. 222; and *State v. Lantz,* 23 Kan. 728. In some of these cases the misconduct was much greater than here. Others would hardly be approved in the light of our later decisions. It was misconduct and irregular for the bailiff to have any discussion with the jury pertaining to the case, but every irregularity does not constitute reversible error. (See G. S. 1935, 62-1718.) Here the bailiff did not discuss the merits of the case with the jury. In the later cases similar irregularities have been held not to justify reversal. (*State v. Borchert,* 68 Kan. 360, 74 Pac. 1108; *State v. Evans,* 90 Kan. 795, 136 Pac. 270; *State v. Dunford,* 91 Kan. 898, 129 Pac. 430; *State v. Richardson,* 137 Kan. 38, 19 P. 2d 735.) No prejudicial error is shown in this respect.

Notwithstanding the abbreviated record brought up by appellant, the state—perhaps out of an abundance of caution—had all the testimony transcribed and has prepared and filed a counter abstract of the evidence and containing all the court's instructions. This we have examined. On the whole, we are convinced appellant had a fair trial and that a proper verdict was returned.

Finding no material error in the record, the judgment of the court below is affirmed.